We've got two cases for argument this morning, and then we will take a break before we hear our third case. The first case this morning is 147060 Lamb v. McDonald. Mr. Carpenter. Good morning, Your Honor. May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Carl Lamb. The Veterans Court mistakenly interpreted the provisions of 38 CFR 3.251 parens A as it existed in 1957 to mean that a veteran cannot assert, as an adequate reason for failing to report for a scheduled VA examination, his lack of notice from the VA of that examination. Further, the lower court required that there be a showing of fault on the part of the VA as a reason for the veteran's failure to report. Well, that's your main argument, right? I mean, that's your legal question. And I guess I'm having a hard time seeing it. I mean, this wouldn't necessarily be true in all cases. But it seems to me that the reference to fault in this circumstance seemed perfectly appropriate and unique to these circumstances, to the extent that he says he didn't get the notice. What's the next question you ask then to ascertain whether or not he had a reasonable, adequate reason not to report? Well, in this case, Your Honor, the record is clearly documented that the VA's notice was returned to them as undeliverable, and that that was well documented in the file that not only one attempt at notice was made, but a second attempt at notice was made. So your view is that that was an adequate reason in and of itself? If it's sent to an address and it's returned, then that satisfies the regulatory language of without adequate reason? Yes, Your Honor, because there is a documented evidence in the file that the VA's attempt to notify him to report were unsuccessful, and that therefore there was no actual knowledge on the part of the veteran that could impute the sanction that was imposed. The sanction that is imposed by this regulation is that if you fail to report when you have been notified, then you lose the benefits until you report. So you want us to interpret the regulation to say that any time there's an absence of actual notice that there's always sufficient cause or reason? Well, I'm not sure that that's necessary in this case because of the way in which the case was decided below. The case was decided below by saying that there needed to be a showing of fault and that they... What precise language are you relying on to say that there needed to be a showing of fault? You mean in the Veterans Court decision, Your Honor? Yes. Not in the regulation, okay. Okay. Thank you. was not due to the fault on the part of the VA. So the lower court embraced the board's determination that there needed to be a showing of fault by the VA. But in context, isn't that really relating to the fact that what they found was that the fault was on the claimant? In other words, the claimant knew about his obligation to notify the VA of change of address. He had done it in the past. But this time, he didn't notify of any change of address. He didn't explain why he didn't receive the notice that was admittedly sent to his current address. Well, with all due respect, Your Honor, that requires a level of clairvoyance on the part of a veteran to know that there has been something sent. What the VA is doing is using the retrospective look back and say, well, you knew you had an obligation to report a change of address. There's nothing in the record to indicate some reason that he changed his address. I think, in fact, what happened in this case is that the address they had was simply incorrect as they sent it in the notice and it never actually got physically delivered. That's not what the factual findings are. I'm simply saying that I believe that's what happened. But that's not part of the analysis of this regulation. The regulation says that it's a failure to report without adequate cause, excuse me, adequate reason. The adequate reason in this case was he had no knowledge that there was an examination. To circle around… Hypothetically, if we had a circumstance where somebody just went and moved to Hawaii for three years but kept their current address in D.C. and they get the notice and he obviously doesn't receive it. They sent it and he just hasn't received it. Clearly, he didn't get it. He can swear up and down, I never received it. In your view, is that adequate reason not to show up? No, Your Honor. In this case… So if they had sent it to the correct address and he just for whatever reason never received it, never got it because he wasn't there or he wasn't available, that would not be adequate reason, right? Yes, but that is not the facts in this case. In this case, the record is documented that the VA sent the notice to report and got a return from the Postal Service saying that the notice was not delivered. That non-delivery in your first hypothetical, if the veteran was in fact in Hawaii, would not have changed the fact that the notice had been sent to the correct address in Washington, D.C. and returned not deliverable. If it was returned not deliverable, you cannot, as the VA and the Veterans Court did in this case, impute knowledge to the veteran that he had an obligation to report. But it wasn't deliverable because there was no one there to accept it. There's no finding in the record that it was the wrong address. I understand that. And all that is in the record is the fact that it was not delivered. So there is actual evidence that the notice was not delivered to the veteran. Okay, but the findings of fact that are below is that it went to the correct address, but there was no one there to accept it. So it came back because it was sent with a return receipt. There was no one there to accept it. He said, I just happened to be working somewhere else for six months, and that was his only explanation. So we don't have a situation in which they were put on notice that somehow it was the wrong address. There's actually a factual finding that it was the correct address, and he gave the VA that address. And the purpose of this regulation is to suspend benefits when there is notice that was achieved. Notice was not achieved in this case. And what the VA is doing is saying that it's perfectly permissible to suspend benefits when they don't get the notice delivered. That goes back to my prior question. So what you're saying is that we should decide as a matter of law that this regulation would apply. Adequate reason for not appearing would always exist whenever there was an absence of notice, regardless of what the circumstances for the absence of notice. Yes, Your Honor. What if the mail had been received and the claimant just decided not to open his mail? Sat on it for six months. Then the presumption of regularity would apply that they sent the notice and it was received. The VA cannot use the presumption of regularity in this case because the notice was not received. Can I ask you, didn't we say expressly in the 2002 case whether that reason, the adequate reason for not reporting, is adequate depends upon the reason Lamb did not receive the notice. Isn't, aside from everything else, isn't that inconsistent with the position that I think you've just articulated that non-receipt of the notice itself is always by law adequate reason. We said it depends on why he didn't get the notice. And you're citing the earlier case? Yes, 284 F. 3rd at 1383, I think is the date. Well, in that case, as presented, it was presented in the context of a different decision that had been made by the Veterans Court. In this case, we're dealing with a specific decision by both the Board and the Veterans Court that interprets the regulation to require or to not permit consideration of actual non-receipt and fault on the part of the VA. That is a different legal proposition than the proposition that was referenced in the earlier Federal Circuit case. Can I ask, this is a clear and unmistakable error case, is that right, that we have in front of us right now? The underlying claim is that the original decision should be revised based upon a clear and unmistakable error for the failure to correctly apply this regulation. And so whether there was a clear and unmistakable error depends on what was in the record then. That's correct. And being 1957. 1957. And it depends upon how this regulation is interpreted. So the explanations provided subsequently about how he was off working on a job and his wife was elsewhere for a while, that's interesting background, but not otherwise. It's not pertinent to a consideration of whether there was or was not clear and unmistakable error for the failure to correctly apply this regulation. Can I ask you another factual question, which also might be not pertinent? Was Mr. Lamb aware of the debiting of the required repayment of severance pay and when that came to a halt? He was aware of it to the extent that the compensation that was awarded was not being paid. He was not aware of it, as it were, on a schedule as to when he would then be entitled to receive the act. Again, I'm not sure whether this bears, but he submitted a letter in 1998 that said as of August 1957 there was, I forget what it was, but 34 months left of $17 a month debiting. So that should have run out in the early summer of 1960. 35 years passed before he does anything. How is it that he did not know that checks that should have started coming were not coming? Full stop. Well, I think it's because of a lack of understanding until 1998 that there should have been a resumption of his benefits. And to me it's understandable because he never received benefits. In other words, this is not a case in which... I can understand if he didn't know that he was supposed to have the severance pay debited and then he wouldn't have had essentially a comparison to use to say, oh, by now I should start getting the checks and notice their absence and do something about it. Is that what happened, that he wasn't even aware that there was this repayment obligation and it was being... No, I believe he was aware that there was a repayment obligation based upon his communication in the late 1990s. But it appears... I mean at the time aware. At the time, no, I do not believe that he had an understanding of the offset based upon his severance pay and that it would, as it were, commence anew in 1960. But again, that's not pertinent to the question that's before this court, which is the interpretation of this regulation. Because in the request for revision, his allegation is that this regulation was not correctly applied. If it had been correctly applied, his benefits would not have been suspended. What is the relief you would seek here if he prevailed? 38 years have passed. From 1960 to the time that he went in, I believe in 1998, for his claim for increase. Yeah, but he didn't have a subsequent re-examination through that entire period. You're saying in the absence of an examination he should just get, be able to recoup? He would be entitled to the reinstatement, I believe, of his 10% rating from 1960 to 1998. I'm going to hear from the government while we store a couple minutes. Thank you, Your Honors. I may pick up on Your Honors' last question about his awareness. If you look at page 50 of the Joint Appendix, second paragraph, the last sentence. The paragraph that begins CFR 3.953? No, it starts in August of 1957. Okay, first full paragraph. First full, yes. Last sentence, and this is for Mr. Lamb. I would not expect to hear anything from the VA until June of 1960, when I would have expected to get the first check. Right, but that is actually preceded by, even if I knew about the award. And I think just before that he says, actually in 1952, I never even knew that I was given a 10% award. I think he was reasonably careful in here to say, I had no idea that there was money being credited to any accounts here. Right, I mean, he originally in this letter claimed that he had never even been aware that he was awarded benefits. He said that the mail wasn't delivered to a different address at that time. He subsequently changed that, and there's a finding that indeed he did receive the notice that he had been awarded benefits. Oh, is that in? I think it's in the most recent board decision. Okay, that's okay. But he is clear that, in fact, that first prior sentence is incorrect, that he did receive the notice. Can I ask you, I guess, more on the legal question?  For clear and unmistakable error, we don't get to, or rather the board doesn't get to, take and rely on new explanations not apparent in the record at the time for why he didn't get notice. If that's the case, what could constitute an adequate reason based on the record at the time in any case of returned notice? It could be something indicating in the record that the VA had the wrong address would be an adequate basis, or that the VA simply never sent the notice would be another example of something that on a clear and unmistakable error standard of review could be an adequate reason. Today, the VA would send it to an alternative address, right? And he did argue if they could locate an additional address, but this was an argument that was raised before the board, and the board had found that the Department of Veterans Affairs had made an adequate attempt to find an alternative address. Meaning his parents' address? Didn't they have his parents' address? No, I think it was his prior address. He had moved around quite a bit. I don't believe they had his parents' address, but I'm not sure about that. I think what he had argued that they should have done was contact the trailer court. This was a trailer park, and I think his argument had been they should contact the trailer court, but I believe that the finding was that wouldn't have helped him. Just as a follow-up to Judge Toronto's question, so your answer is the only thing that could constitute DOE would be, in other words, a demonstration of fault by the Veterans Administration. As I stand here, I can't think of how there would be something in the record. No, no, no, but that seems to be, I think Mr. Carpenter would leap on that because his argument in this case is that there's a legal question, and the legal question is the error in the application of the interpretation of this regulation to focus on fault of the government. So why is he wrong in that regard, given that you've kind of agreed that the question to be asked and implied in the regulation is fault on the part of the government? No, I don't think that's correct. I think those two examples involve fault, but there could be other things such as that the veteran, there could be evidence that the veteran was so sick at the time that he couldn't receive the mail, which is an example that the Board relies on. The Board never said that fault was the only way. It explicitly recognized that regardless of fault, there were other circumstances that could constitute adequate reasons, such as if the veteran was sick or taking care of a hospitalized family member. And I suppose there's a difference between what could constitute an adequate reason on one hand and what kind of adequate reason would be apparent on the record at the time, and the latter might effectively equate to fault without the former. Correct. I mean, we're dealing with the Q claim. I would suspect in the typical case, the veteran would notice when their benefits were cut off and would promptly come to the DVA and start the process. So we wouldn't have the 35-year gap where we have to rely on Q to go back. So that's where I think this, you know, where the limitation comes from is the Q, not from the adequate reason requirement. And I believe Mr. Carpenter today proposed the legal position that as long as the veteran does not receive a notice, that in and of itself is an adequate reason. However, in the initial LAM decision, this court expressly rejected that proposition, stating, quote, whether that reason is adequate, however, depends upon the reason LAM did not receive the notice, end quote. And that's from page 1383. So this court's already recognized that you have to look at the ultimate reason as to why the veteran did not receive the notice of the physical examination and that it rejected a per se rule. And if I could go back to one other point regarding the veterans' court's decision, which Mr. Carpenter pointed you to pages 3 and 4 of the joint appendix where the veterans' court cites to the board's decision. However, in the next paragraph, the veterans' court goes on to indicate and the additional reason that there was no adequate reason was that the veteran had failed to keep the Department of Veterans Affairs informed about his whereabouts. And that's in the first full paragraph on page 4. So it did not adopt a rule that a fault automatically is an inadequate reason. It looked at the circumstances of this case. And that raises a factual issue that this court does not possess jurisdiction to review. Can I just ask you one where we started? Did the board, with respect to whether he received notice of the October 1952 award, conclude anything more than it would presume that he did because it wasn't, the notice was not returned as undeliverable? I actually find that contrary to his assertion, like in the letter at JA-50, we now have evidence that he actually did receive it. That was what I was thinking of, Your Honor. Okay. It's several times. I mean, it recites the contention that he didn't get it and then says that this was not returned as undeliverable at JA-152 and the next one wasn't returned as undeliverable. Yes, and I believe that in an earlier, that's what I was thinking of, but I do believe that there wasn't, this was back on remand twice. And I believe there was an earlier board decision in the joint appendix where they had addressed this issue because early on he had argued that he hadn't received the decision of award. But subsequently, I believe there's a holding, but I can't find it. If Your Honors have no further questions, for these reasons and the reasons set forth in our brief, we respectfully request that this Court dismiss this appeal or any alternative affirming decisions of Veterans Court. Thank you.  I just want to reiterate that the VA is not a court and affirmed by the lower court that unless the VA had the wrong address, that the only adequate reason would be fault by the VA. That's not... Can I just ask him? This is I guess the question that I asked the government's attorney. Maybe that is true as a practical matter in a CUE case because the record is so constrained, maybe it is, maybe it isn't. But even if it is, that doesn't seem to me to mean that it has interpreted the regulation to require fault since information might be supplied after the fact to explain what the record on, at the time, suggests is not an adequate reason. And then it turns out it is, but the agency would have had no way of knowing that at the time. The no way of knowing is critical to the CUE inquiry but not part of other aspects of the application of the regulation. Well, Your Honor, I do not believe it is critical if the regulation is interpreted to not impute or require the showing of fault by the VA because there was either an adequate reason which has never been addressed on its face for his having not received notice. In other words, if he didn't get notice, was it an adequate reason for him to therefore have not appeared for the regulation? And what's critical in this case is that we're dealing with a regulation that imposes a critical sanction on the veteran, the termination of his benefits. Those benefits were, in this case, terminated for a period of more than 40 years. And as a consequence, we're asking the veteran to have some aforeknowledge of what he was supposed to have done when he had no idea that he was supposed to report. This regulation says that there is an adequate reason provision that will eliminate the sanction. The exploration of the adequacy of that regulation, excuse me, of that reason was never allowed in this case because of the requirement that was imposed by both the Board and the Veterans Court that there be a showing of fault by the VA. Or, as suggested in the alternative, that the veteran had failed to keep them informed. There's no requirement in this regulation that the veteran keep them informed in order to avoid the sanction in this case. Do you agree with the government that despite his initial claim that he didn't receive the notice of the initial award when he was living at his prior address, that he later backed off of that and conceded that he did it? Yes, Your Honor. And that only has to do with whether or not he had been granted the 10 percent and that that 10 percent had been suspended until the recovery of the separation pay. So he knew he was in the system and that at the end of that five-year period would be entitled to the receipt of benefits. I'm not willing to go that far, Your Honor. I think he was aware that there had been an award. I do not believe he understood the nature of the offset for the separation pay and that there was a specific time period in which those would answer. So that's what he actually says in his letter, the same letter where he initially claimed he didn't get it. He said, even if I had, that would just have informed me that at the end of five years I would be entitled to benefits. That's correct. He conceded that that's what it would have informed him of. And then later he said, and I got it. Except, Your Honor, frankly, that's in 1998. That's when he was discovering what his rights were that he did not understand in 1957. In other words, in 1957 the VA took an action to terminate his benefits for which he got no notice of. He never was told that his benefits were suspended. What you're talking about is his actual knowledge that the benefits were being offset and that they would be restored at some point in time in the future. What Mr. Lamb was confronted with is that he didn't understand that his benefits had been terminated. In 1998 he puts in writing that he now understands what had been going on and that there was a period in time in which he should have been receiving benefits and didn't. And that's what he is trying to accomplish in this litigation is to get those benefits restored. This regulation, as interpreted, imposes a clear and vital sanction on the veteran that ought to require actual knowledge and that the lack of actual knowledge should be an adequate reason for not reporting.  Thank you. Thank you very much, Your Honor.